**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:17-cv-40-RJC**
**(3:14-cr-82-RJC-8)**

| | | |
|---|---|---|
| **MARCO VINICIO FALLAS HERNANDEZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. Nos. 1, 11); see also (Doc. No. 3) (supporting memorandum). Petitioner has also filed several letters in which he seeks a sentence reduction. (Doc. Nos. 6, 7). The Government has filed a Response opposing relief. (Doc. No. 4).

## I.    BACKGROUND

Petitioner was charged along with seven co-defendants in a sweepstakes telemarketing fraud conspiracy in Costa Rica. The charges pertaining to Petitioner are: Count (1), conspiracy to commit wire fraud; Counts (2)-(11), wire fraud; Count (12), conspiracy to commit money laundering; and Counts (13)-(21), money laundering. (3:14-cr-82, Doc. No. 17).

Petitioner pled guilty pursuant to a written plea agreement to Counts (1), (11) and (12), in exchange for the Government's dismissal of the remaining counts. (3:14-cr-82, Doc. No. 32 at 1). The written plea agreement sets forth Petitioner's sentencing exposure for each count and states that the sentence has not yet been determined and the Court will consider the advisory sentencing guidelines. (3:14-cr-82, Doc. No. 32 at 2-3). The agreement states that the parties disagree on

several sentencing factors including the loss amount that was reasonably foreseeable to Petitioner. (3:14-cr-82, Doc. No. 32 at 4). Petitioner agreed to "pay full restitution in an amount determined by the Court" in an amount reflecting Petitioner's total offense conduct that is not limited to the counts of conviction, the restitution would be mandatory, and would be joint and several with that of his co-conspirators. (3:14-cr-82, Doc. No. 32 at 8). Petitioner reserve the right to dispute the restitution amount recommended by the Government of $4,680,947.98. (3:14-cr-82, Doc. No. 32 at 8). Petitioner stipulated that there is a factual basis for the plea and that the Court may use the offense conduct set forth in the written Factual Basis to establish a factual basis for the plea, except as to facts to which Petitioner specifically objected. (3:14-cr-82, Doc. No. 10). Petitioner agreed to waive his right to withdraw the plea once the Court accepted it, the rights to be tried by a jury, to be assisted by an attorney at trial, to confront and cross-examine witnesses, and not to be compelled to incriminate himself. (3:14-cr-82, Doc. No. 32 at 11). Petitioner and his counsel warranted that they discussed Petitioner's appellate and post-conviction rights, whether or not there are potential issues for appeal or post-conviction action, and the possible impact of any such issue on the desirability of Petitioner entering into the plea agreement, and Petitioner waived all such rights to contest the conviction and/or sentence within the statutory maximum except for claims of ineffective assistance of counsel and prosecutorial misconduct. (3:14-cr-82, Doc. No. 32 at 11-12). Petitioner waived all rights to request or receive records from any United States department or agency pertaining to the investigation or prosecution of the case. (3:14-cr-82, Doc. No. 32 at 12). Petitioner stipulated that any sentence within the applicable guidelines range is per se reasonable but reserved his right to file a "variance motion" pursuant to 18 U.S.C. § 3553(a). (3:14-cr-82, Doc. No. 32 at 12). The agreement specifically addresses immigration, stating that "Defendant recognizes that pleading guilty may have consequences with respect to his

immigration status if he is not a citizen of the United States…. [and] because defendant is pleading guilty to fraud charges, removal is presumptively mandatory….” (3:14-cr-82, Doc. No. 32 at 16). Despite this, “Defendant nevertheless affirm[ed] that he wants to plead guilty regardless of any immigration consequences that the plea may entail, even if the consequence is his automatic removal from the United States.” (3:14-cr-82, Doc. No. 32 at 16).

A Rule 11 hearing came before Magistrate Judge David Keesler on April 9, 2015. (3:14-cr-82, Doc. No. 108). When Judge Keesler asked whether Petitioner was ready to enter his plea, the following transpired:

> MR. GELETY: Judge, he is. We have taken a lot of time going over this. We probably have seven or eight different versions of the plea agreement as we refined it talking about those things with Mr. Hernandez. We've explained it. We've read it together. We've read it to each other. We've seen the differences. And unfortunately there is no choice number three. He understands that either we're going to go to trial or we're going to do this plea agreement. And I can say that he understands and he's ready to do the plea agreement.
>
> Is that correct?
>
> THE DEFENDANT: Yes, sir.

(3:14-cr-82, Doc. No. 108 at 2-3).

Petitioner stated in open court during a lengthy and thorough colloquy that his plea was knowingly and voluntarily entered. (3:14-cr-82, Doc. No. 108 at 4-12, 21-23). Petitioner acknowledged the rights he was waiving by pleading guilty including his possible deportation from the United States. (3:14-cr-82, Doc. No. 108 at 12). He agreed that he discussed the sentencing guidelines with counsel, that the Court would determine the sentence after the PSR was prepared, that the Court might not follow the Government's recommendation with regards to the sentence, that he may receive a sentence that is higher or lower than the guidelines, and that the Court may order restitution. (3:14-cr-82, Doc. No. 108 at 12-16). He went over Counts (1), (11) and (12) with

counsel carefully, understood them, and is guilty of those crimes. (3:14-cr-82, Doc. No. 108 at 16).
He went over the plea agreement carefully with his lawyers, understood it, and agreed with its
terms. (3:14-cr-82, Doc. No. 108 at 21). He understood and was waiving the rights set forth in the
plea agreement including his appellate and collateral review rights. (3:14-cr-82, Doc. No. 108 at
22). He also read and understood the written factual basis, reviewed it with counsel, and agreed
with what it said. (3:14-cr-82, Doc. No. 108 at 23). Nobody threatened, intimidated, or forced him
to plead guilty. Other than the terms of his plea agreement, nobody made him any promises of
"leniency or a light sentence" to get him to plead guilty. (3:14-cr-82, Doc. No. 108 at 23). He had
enough time to discuss any possible defenses with counsel, was satisfied with his lawyer's
services, and did not have anything else to say about counsel's services. (3:14-cr-82, Doc. No. 108
at 23). He understood all parts of the proceeding, still wished to plead guilty, and had no questions
or statements at that time. (3:14-cr-82, Doc. No. 108 at 24).

Petitioner admitted in the Factual Basis that, beginning around January 2008, and
continuing through September 2014, he "participated in various sweepstakes telemarketing call
centers located in Costa Rica for the purpose of defrauding U.S. residents by convincing them to
pay money in an effort to claim a fictitious sweepstakes prize." (3:14-cr-82, Doc. No. 33). He
reserved the right to contest the number of victims, 50, and the amount of the fraud, $4,680,947.98,
asserted by the Government. (3:14-cr-82, Doc. No. 33 at 3). Petitioner admitted the criminal
activity charged in Counts (1), (11), and (12), but reserved the right to contest his participation in
the additional counts. (3:14-cr-82, Doc. No. 33 at 4).

The Presentence Investigation Report ("PSR") calculated the offense level using Count
(12) and the base offense level of seven for wire fraud. (3:14-cr-82, Doc. No. 55 at ¶ 37). Eighteen
levels were added because the loss amount was more than $2,500,000 but less than $7,000,000,

four levels were added because the offense involved more than 50 victims, two levels were added because the offense involved misrepresentation that the defendant and others were acting on behalf of a government agency, and two levels were applied because a substantial portion of the sweepstakes scheme was committed from outside the United States, resulting in a base offense level of 33. (3:14-cr-82, Doc. No. 55 at ¶ 30). Two levels were added because Petitioner was convicted under 18 U.S.C. § 1956. (3:14-cr-82, Doc. No. 55 at ¶ 31). Two more levels were added because the majority of the victims were elderly. (3:14-cr-82, Doc. No. 55 at ¶ 32). Two levels were deducted because Petitioner was a minor participant in the criminal activity, and three more levels were deducted for acceptance of responsibility, resulting in a total offense level of 32. (3:14-cr-82, Doc. No. 55 at ¶¶ 33, 38-40). Petitioner had zero criminal history points and a criminal history category of I. (3:14-cr-82, Doc. No. 55 at ¶ 45). The resulting guidelines range was 121 to 151 months' imprisonment. (3:14-cr-82, Doc. No. 55 at ¶ 76). The Restitution section states that, in accordance with U.S. Sentencing Guidelines § 5E1.1, restitution shall be ordered. (3:14-cr-82, Doc. No. 55 at ¶ 89).

Counsel filed objections to, *inter alia*:  the elderly victim enhancement; the loss amount of $4,680,947.98 and resultant 18-level enhancement; and the restitution amount of $4,082,328.27. (3:14-cr-82, Doc. No. 51). Counsel argued that Petitioner should receive a downward variance to avoid a sentencing disparity and due to his cooperation. (3:14-cr-82, Doc. No. 51).

Petitioner stated at the sentencing hearing on February 12, 2016, that he had a chance to read the presentence report, understood it, and had enough time to go over it with his attorney. (3:14-cr-82, Doc. No. 109 at 2-3). Defense counsel withdrew all objections to the PSR in light of the Government's 5K1.1 Motion seeking a 50% sentence reduction. (3:14-cr-82, Doc. No. 109 at 3); see (3:14-cr-82, Doc. No. 78).

Counsel argued that the Court should grant a further downward departure or variance because Petitioner was "one of the saddest sacks that [he had] run across." (3:14-cr-82, Doc. No. 109 at 6). According to counsel, Petitioner "[a]dmitted his involvement the same day he was arrested," had completed a 45-day drug program and other educational programs in prison, became active in religious study, exhibited exceptional remorse, a co-defendant was sentenced to 84 months' imprisonment, Petitioner had dual diagnoses of addiction and depression, and had exceptional family circumstances because his mother was ill with cancer. (3:14-cr-82, Doc. No. 109 at 8-12). Counsel requested a drug program, halfway house, "any anything else that the Court could squeeze in" on the outside chance that Petitioner could complete his sentence and have the hope of seeing his mother again. (3:14-cr-82, Doc. No. 109 at 11-12).

Petitioner chose to address the Court, stating:

THE DEFENDANT: I – I just want to start out by saying that I messed up really bad. I can't believe I did all the stuff. I'm so sorry. I took advantage of people. I lied. I took their savings, their – their livelihood, their mortgage payment, their bills. I took money for their food. I was homeless and I known what it is to be hungry and I hated it. I made those people hungry. I hate myself. Just look what I did. I'm asking you to forgive me because I'm having a hard time to forgive myself. I hurt these people. I can't help but think that the reason that my mom has cancer is because of the things that I've done. I mean, I made her sick.

… I ended up on drugs and wasting my intelligence, my gifts that God has given me. Instead of using those gifts to better myself, I hurt people. I repent. I repent.

Now that I'm off drugs when **I look back and I see what a rotten person I was, a parasite of society, a menace. I feel like I must have been possessed by Satan himself.** I never want to see or feel this way again. I never want to see this happen to me again.

… I'm going to spend the rest of my life trying to make up for this mess I've made. I can't even believe that I dealt with these people. **I'm on a list of scum and losers. I was a scum.** That's on me. I got to do something.

I was out there, too much of a coward even to rob somebody or to steal somebody. I hid behind a phone. I hid behind as a coward, a thief. The word says

letting he who steals, steal no longer. I just want to make this all for the glory of God and then hopefully I'll be able to help people out. And I just want to thank you. And once again, I'm so sorry to even be here today.

(3:14-cr-82, Doc. No. 109 at 12-14) (emphasis added).

The Court granted the Government's 5K1.1 motion, sentenced Petitioner to 60 months' imprisonment for each count, concurrent, (3:14-cr-82, Doc. No. 109 at 24), and ordered restitution in the amount of $4,082,328.27, (3:14-cr-82, Doc. No. 109 at 25). The Court noted Petitioner's history of mental health issues and recommended that he be allowed to participate in any available mental health treatment program. (3:14-cr-82, Doc. No. 109 at 25-26). The Court recommended that Petitioner be located in South Florida in a facility that would accommodate a drug program so he could attempt to further mitigate his sentence. (3:14-cr-82, Doc. No. 109 at 28-29).

The Court advised Petitioner of his right to file a notice of appeal despite the waiver in his plea agreement, recommended that he talk to counsel about his appeal rights, and advised him that he could apply for leave to file a notice of appeal without cost and, if he requested, with the Clerk of Court's assistance. (3:14-cr-82, Doc. No. 109 at 29-30).

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on January 23, 2017. (Doc. Nos. 1, 11); see also (Doc. No. 3) (supporting memorandum). He argues (renumbered): (1) the Court erred with regards to sentencing by ordering restitution of $4,082,328.27 against a Petitioner even though he is indigent and a minimal participant, and by calculating Petitioner's sentence based on that inflated loss amount and other inapplicable enhancements; (2) the Court's recommendations that Petitioner participate in a drug treatment program and halfway house are not being honored; (3) Petitioner's guilty plea was involuntary; and (4) counsel was ineffective: (a) with regards to the guilty plea, (b) at sentencing; and (c) with regards to a direct appeal.The Government filed a

Response arguing that his attack on the restitution order is waived, non-cognizable, and meritless, and that his claims of ineffective assistance of counsel are meritless. (Doc. No. 5).

Petitioner has also filed letters that reiterate his § 2255 claims and request a sentence reduction of at least six months based on his rehabilitative efforts in prison and his mother's terminal medical condition. (Doc. Nos. 6, 7); see also (Doc. No. 8) (medical records).

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

 "[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement. See United States v. Lemaster, 403 F.3d 216, 200 (4th Cir. 2005). There are narrow exceptions to the enforceability of plea waivers such that "even

a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." United States v. Johnson, 410 F.3d 137, 151 (4ᵗʰ Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Marin, 961 F.2d at 496 (emphasis added).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have

been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 697.

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Strickland also applies in the context of appellate representation. Counsel must file a notice of appeal when instructed by his client to do so. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Even if a client does not expressly request an appeal, counsel must conduct with the client about an appeal when a rational defendant would want to appeal or the client expresses an interest in appealing. United States v. Cooper, 617 F.3d 307 (4th Cir. 2010). Dereliction of either of these duties constitutes deficient performance. See Flores-Ortega, 528 U.S. at 480; Cooper, 617 F.3d at

313. A defendant establishes prejudice by demonstrating a reasonable probability that he would have filed an appeal "but for" counsel's failure to file or consult. Flores-Ortega, 528 U.S. 484.

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

### (1) Involuntary Plea

Petitioner appears to argue generally that his guilty plea was not knowingly and voluntarily entered. [1]

Before accepting a guilty plea, a district court must conduct a plea colloquy in which it informs the defendant of, and determines if the defendant comprehends, the nature of the charge to which he is pleading guilty, the maximum possible penalty he faces, any mandatory minimum penalty, and the rights he is relinquishing by pleading guilty. Fed. R. Crim. P. 11(b)(1); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). The court must also ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement. Fed. R. Crim. P. 11(b)(2), (3).

---

[1] Petitioner's more specific claims that counsel's deficient performance rendered his guilty plea involuntary are addressed in Section (4)(a), *infra.*

Magistrate Judge Keesler complied with Rule 11 by asking Petitioner, under oath, whether he understood the nature of the charges, his sentencing exposure, and the consequences of his plea including the rights he was waiving by pleading guilty. Petitioner stated that he understood and specifically agreed to waive his appellate and collateral rights except for claims of prosecutorial misconduct and ineffective assistance of counsel. The plea was supported by a factual basis and Petitioner stated under oath that he was pleading guilty because he was guilty, without threats, coercion, or promises. Petitioner further stated that he was satisfied with his lawyer's services.

Petitioner's unsupported allegations that his plea was not knowingly and voluntarily entered are rejected. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221–22. The freely and voluntarily entered guilty plea thus waived all non-jurisdictional defects.

**(2)**      **Trial Court Error**

Petitioner appears to argue that the Court erred by: (i) ordering him to pay restitution of $4,082,328.27 because it is higher than his co-defendants' restitution orders, he is indigent, and he was a minimal participant in the offense; (ii) for applying inapplicable sentencing enhancements; and (iii) for accepting his guilty plea to offenses that were not supported by sufficient evidence.

(i)-(ii) First, Petitioner contends that the trial court erred by imposing restitution in the amount of $4,082,328.27, and for relying on inapplicable enhancements in calculating his sentence.

The written Plea Agreement reserved Petitioner's right to dispute the Government's recommended restitution amount of $4,680,947.98, and certain sentencing enhancements such as the 18-level enhancement for a loss of more than $2,500,000 but less than $7,000,000. (3:14-cr-82, Doc. No. 32 at 5, 8). Petitioner filed PSR objections including to the amount of restitution and loss amounts. (3:14-cr-82, Doc. No. 51 at 5, 7-8). However, Petitioner waived these objections at the sentencing hearing in light of the Government's 5K1.1 Motion seeking a 50% sentence reduction. See (3:14-cr-82, Doc. No. 109 at 3). The Plea Agreement, which was knowingly and voluntarily entered, also contains an appellate and post-conviction waiver of "all … rights to contest the conviction and/or sentence within the maximum provided by the statute of conviction except for (1) claims of ineffective assistance of counsel or (2) prosecutorial misconduct." (3:14-cr-82, Doc. No. 32 at 11-12); see Section (3), *infra*. Petitioner does not argue that the amount of restitution ordered exceeds the limits authorized by the law, rather, he argues that he is indigent and played a minor role in the offense. See 18 U.S.C. § 3663A (requiring mandatory restitution in the amount of the value of the property on the date of the damage, loss, or destruction, or the value of the property on the date of sentencing less the value of any part of the property that is returned). Nor does Petitioner contend that his 60-month sentence exceeds the 20-year statutory maximum for each offense to which he pled guilty. See (3:14-cr-82, Doc. No. 55 at ¶ 75). His present attacks on the amount of restitution and sentencing calculation are therefore waived. See United States v. Cohen, 459 F.3d 490, 500 (4th Cir. 2006) ("Because the district court's restitution award was within the scope of its authority under the MVRA, [defendant's] challenge to the amount of restitution ordered falls within the scope of the appeal waiver contained in the plea agreement."); United States v. Dillard, 891 F.3d 151, 157 (4th Cir. 2018) (same); United States v. Brown, 232 F.3d 399,

404 (4th Cir. 2000) (plea waiver of "whatever sentence is imposed" precluded a claim that the sentence resulted from a misapplication of the guidelines).

(iii)     By pleading guilty and admitting the existence of a factual basis to support that plea, Petitioner admitted his guilt to all the elements of the three offenses to which he pled guilty. See United States v. Nelson, 484 F.3d 257, 260 (4th Cir. 2007) (a knowing and voluntary guilty plea to a § 924(c) offense admits all the material elements of the crime). His present contention that there was insufficient evidence to support his guilty pleas is conclusively refuted by the factual proffers, his freely and voluntarily entered guilty plea, and numerous admissions of guilt in open court. See Blackledge, 431 U.S. at 74; see, e.g., Lemaster, 403 F.3d at 221–22 (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Petitioner's claims that the Court erred by accepting his plea and calculating the sentencing range and restitution amount have therefore been waived.

**(3)     Execution of Sentence**

Petitioner argues that the Federal Bureau of Prisons is not honoring the Court's recommendations that he be permitted to participate in a drug treatment program and halfway house that could potentially reduce his sentence.

Attacks on the execution of a federal sentence, as opposed to its legality, are properly brought in a habeas corpus petition under 28 U.S.C. § 2241 rather than § 2255. United States v. Miller, 871 F.3d 488, 490 (4th Cir. 1989). The respondent to a habeas corpus petition is the person having immediate custody over the petitioner. 28 U.S.C. §§ 2242, 2243; Rumsfeld v. Padilla, 542

U.S. 426, 434-35 (2004). When a petitioner is physically detained, the immediate custodian generally is the warden of the facility where the petitioner is confined, and the petition must be filed in the district where the prisoner is confined. Padilla, 542 U.S. at 435, 446-47.

Petitioner's claims that the Federal Bureau of Prisons is not honoring the Courts' orders that Petitioner be permitted to participate in a drug treatment program and halfway house go to the execution of the sentence rather than the sentence itself. See, e.g., Miller, 871 F.2d at 490 (motion asking the district court to direct the Bureau of Prisons to award him jail credit addressed the computation and execution of the sentence, rather than the sentence itself, and had to be brought under § 2241 in the district of confinement instead of in the sentencing court); Brown v. United States, 2011 WL 6000547 (W.D.N.C. Nov. 30, 2011) (petitioner's challenge to a decision regarding whether or not he was eligible for an RDAP reduction goes to the sentence's execution rather than its legality and must be brought via § 2241 rather than § 2255). Therefore, these claims must be brought, if at all, in a § 2241 petition filed in the U.S. District Court in the district where Petitioner is confined.

### (4) Ineffective Assistance of Counsel

#### (a) Guilty Plea

Petitioner contends that counsel: (i) never presented him with discovery because there were too many pages, which left Petitioner "blind folded" during the entire proceedings; (ii) lied that the government would bring more charges against him if he did not sign the plea agreement; (iii) failed to discuss the plea's immigration consequences with him; (iv) failed to give him a copy of the plea agreement; (v) told him that he would qualify for a halfway house and drug treatment

program, which would qualify him for release by 2017; (vi) told him to say "yes" to everything at sentencing; and (vii) failed to explain any other options besides pleading guilty.

As a preliminary matter, Petitioner's allegation that counsel's misadvice rendered his plea involuntary is facially insufficient insofar as Petitioner fails to allege that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. <u>Hill</u>, 474 U.S. at 59. His individual claims of error are also meritless.

(i)      Petitioner's contention that counsel failed to share discovery with him is refuted by the record and facially insufficient. As part of the plea colloquy, the Court asked whether Petitioner had enough time to discuss possible defenses with counsel and Petitioner answered "yes." (3:14-cr-82, Doc. No. 108 at 23). He also stated that he was satisfied with counsel's services. (<u>Id.</u>). His present self-serving contentions that he was not pleased with counsel and was "blind folded" about his case, are rejected. <u>Blackledge</u>, 431 U.S. at 74; <u>see</u>, <u>e.g.</u>, <u>Lemaster</u>, 403 F.3d at 221–22. Further, Petitioner fails to explain how his decision to plead guilty would have been any different had counsel physically left him with paper or computerized copies of discovery.

(ii)     Next, Petitioner contends that counsel told him that, if he did not sign the plea agreement, the Government would bring other charges against him which scared Petitioner and led him to plead guilty. Petitioner pled guilty to three of the 21 charges in the superseding indictment, so it would have been accurate for counsel to say that Petitioner would face more counts if he rejected the plea agreement and went to trial. It was also accurate for counsel to say that the Government could file a superseding indictment including additional charges if Petitioner rejected the plea offer. <u>See generally</u> <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996) (the government has broad discretion in how to charge a defendant); <u>see</u>, <u>e.g.</u>, <u>Bordenkircher v. Hayes</u>, 434 U.S. 357 (1978) (prosecutor did not violate due process by threatening to seek an indictment

on an enhanced habitual offender statute if defendant did not plead guilty). Counsel's truthful disclosure of the potential consequences of rejecting the plea offer was not coercive under these circumstances.

(iii)    Petitioner contends that counsel failed to inform him of the immigration consequences of pleading guilty. Even if counsel failed to provide such advice, any such error was rendered harmless by the repeated warnings Petitioner received in the written Plea Agreement and orally at the Rule 11 hearing. See United States v. Akinsade, 686 F.3d 248, 253 (4th Cir. 2012) (a defendant is unable to show prejudice if counsel's misadvice is corrected by the court at a Rule 11 proceeding). The written Plea Agreement provides that the plea may have immigration consequences, and that removal is "presumptively mandatory" because he is pleading guilty to fraud charges. (3:14-cr-82, Doc, No. 32 at 16). Magistrate Judge Keesler warned Petitioner at the Rule 11 hearing that his plea may have immigration consequences and Petitioner stated that he understood. (3:14-cr-82, Doc. No. 108 at 11-12). The Government further stated at that hearing that removal is presumptively mandatory.  (3:14-cr-82, Doc. No. 108 at 20). Petitioner's present unsupported contention that he did not know that his guilty plea could result in his deportation is rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22; see also Akinsade, 686 F.3d at 253.

(iv)    Petitioner contends that counsel failed to provide him with a copy of the plea agreement. Assuming *arguendo* that counsel did not provide Petitioner with a physical copy of the plea agreement, this claim fails because Petitioner admitted that he read, understood, and discussed the agreement with counsel. (3:14-cr-82, Doc. No. 108 at 21). Moreover, Petitioner fails to explain how the lack of a physical copy of the agreement rendered his plea involuntary.

(v)     Petitioner appears to argue that counsel was ineffective for promising him that he would qualify for a halfway house and 500-hour drug program which would reduce his sentence, making him eligible for release by 2017. This claim is conclusively refuted by the record. The Plea Agreement sets forth the maximum sentencing exposure for each count and provides that the Court has not yet determined the sentence, and that "any estimate from any source, including defense counsel, of the likely sentence is a prediction rather than a promise…." (3:14-cr-82, Doc. No. 32 at 4). Petitioner stated under oath at the Rule 11 hearing that he understood his sentencing exposure, that the Court had not yet determined his sentence, and that a sentence more severe than the one Petitioner expected would not permit him to withdraw his plea. (3:14-cr-82, Doc. No. 108 at 12-13). He also stated that his plea was not induced by anything other than the promises in the plea agreement, such as promises of "leniency or a light sentence." (3:14-cr-82, Doc, No. 108 at 23). His present self-serving claims to the contrary are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22; see also Akinsade, 686 F.3d at 253.

(vi)     Petitioner's claim that counsel told him to say "yes" to everything at sentencing is self-defeating because sentencing occurred after the plea was entered and could not have rendered the guilty plea involuntary. (Doc. No. 1 at 5). Assuming that Petitioner meant to allege that counsel instructed him to say "yes" to everything at the *plea hearing*, this claim is refuted by the record. Petitioner had questions at several points during the Rule 11 hearing and was given the opportunity to confer with counsel showing that, even if counsel instructed him to answer "yes" to all the Court's questions, Petitioner did not heed that advice. See (3:14-cr-82, Doc. No. 108 at 3-4, 10, 12). Petitioner swore under oath at the Rule 11 hearing that he was not threatened, coerced, or promised anything in exchange for his plea. (3:14-cr-82, Doc. No. 108 at 23). The plea hearing as

a whole indicates that Petitioner was fully aware of the proceedings and engaged in a meaningful dialogue with the Court and with counsel.

(vii)    Finally, Petitioner's contention that he did not know he had any option besides pleading guilty is refuted by the record. Petitioner acknowledged his right to plead not guilty and proceed to trial in the written plea agreement, plea colloquy transcript, and the § 2255 petition. See, e.g., (3:14-cr-82, Doc. No. 108 at 2-3) (counsel explaining at the Rule 11 hearing that he had been over versions of the plea agreement with Petitioner multiple times and that he understood his options were to plead guilty or go to trial).   Moreover, the record indicates that Petitioner understood his option of proceeding to trial but decided that it was in his best interest to plead guilty. See, e.g., (Doc. No. 3 at 11) ("[Petitioner] took the [plea] Because Counsel said it would make things worst [sic] if [Petitioner] didn't, 5K1.1 was needed."). His present self-serving and unsupported claim that he did not know about any option other than pleading guilty is therefore rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Petitioner's claims that counsel's ineffective assistance rendered his guilty plea involuntary are denied.

**(b)    <u>Sentencing</u>**

Petitioner appears to argue that counsel was ineffective with regards to sentencing because: (i) he failed to give Petitioner a copy of the PSR and only discussing it with him over the phone; and (ii) and he disparaged Petitioner at sentencing.

(i)    First, Petitioner contends that counsel was ineffective for failing to provide him with a copy of the PSR and for failing to come review it with him and, as a result, they discussed it over the phone. His contention that counsel failed to provide him with a copy of the PSR is unavailing because he conceded at the sentencing hearing that he had read the PSR, believed he

understood it. (3:14-cr-82, Doc. No. 109 at 2-3). His suggestion that speaking on the phone about the PSR was insufficient is belied by his statement in open court that had enough time to go over the PSR with counsel. (3:14-cr-82, Doc. No. 109 at 2-3). Moreover, Petitioner is unable to demonstrate prejudice because he waived his PSR objections in light of the Government's 5K1.1 motion seeking a 50% sentence reduction. (3:14-cr-82, Doc. No. 109 at 3). He is thus unable to demonstrate a reasonable probability that his sentence would have been lower had he received a paper copy of the PSR or had counsel discussed it with him personally rather than over the phone.

(ii)    Petitioner appears to argue that counsel was ineffective for disparaging him at the sentencing hearing in an attempt to gain the Court's sympathy. (Doc. No. 3 at 11) ("Counsel portrided me at Sentence by telling the Court that I was the most Miserable person he has met, so that the Judge could fell pitty for me."). This argument is unavailing because the record reveals that the defense strategy was to seek an additional sentence reduction beyond the Government's 5K1.1 motion based on Petitioner's circumstances. Counsel stated that Petitioner is "one of the saddest sacks that I've run across," because he was raised in an abusive environment and turned to drugs and alcohol with a dual diagnosis of depression and addiction. (3:14-cr-82, Doc. No. 109 at 6-7). Petitioner reinforced counsel's statements by telling the Court at the sentencing hearing that, now that he is off of drugs, he sees that he was a "rotten person," "a parasite of society, a menace," "[he] must have been possessed by Satan himself" and that he was "on a list of scum and losers. I was a scum. That's on me." (3:14-cr-82, Doc. No. 109 at 13-14).

Counsel cannot be deemed ineffective for referring to Petitioner as a "sad sack" when Petitioner embraced that theory with his own comments which were far more disparaging than counsel's. Moreover, Petitioner has failed to demonstrate prejudice by showing a reasonable probability that his sentence would have been lower than the 50% reduction that the Court granted,

had counsel not referred to him as a "sad sack," especially in light of the fact that the Court acknowledged Petitioner's circumstances but also recognized extreme seriousness of the offense and deterrence. (3:14-cr-82, Doc. No. 109 at 23-24).

**(c)** **Appeal**

Petitioner contends that counsel was ineffective for failing to consult with him about appealing and for failing to file a direct appeal on his behalf. He seeks an evidentiary hearing "determine whether inmate/Petitioner Unequivocally instructed Counsel to file a Notice of appeal…." (Doc. No. 3 at 7).

Petitioner's allegations are contradictory and fail to state a facially sufficient claim for relief. For instance, Petitioner alleges that he was waiting for counsel to tell him whether an appeal was warranted,[2] yet he also claims that he unequivocally instructed counsel to file an appeal.[3] Similarly, he alleges that he has not seen or communicated with counsel since sentencing,[4] yet he

---

[2] "Counsel never informed [Petitioner] of the Appeal Process, [Petitioner] waited on Counsel to notify [him] and file a Notice of Appeal, which he never did." (Doc. No. 1 at 3). Petitioner "was still waiting on Counsel to inform [him] of the appeal process, and whether a Motion for Appeal was warranted…." (Doc. No. 1 at 4). "Counsel never mentioned to defendant during his entire Court Proceeding that he could Appeal his Conviction." (Doc. No. 3 at 7). "Counsel never Communicated with [Petitioner] to discuss whether there was a viable option for an Appeal." (Doc. No. 1 at 8). Counsel "never informed [Petitioner] that [he] had a right to timely file a timely Notice of Appeal." (Doc. No. 3 at 10). "Counsel of record has failed to communicate or Consult with [Petitioner] on the Appeal rights." (Doc. No. 11 at 1).

[3] "Petitioner was entitled to Counsel who would follow through on express instructions to proceed with an appeal, no matter what the ultimate odds of success." (Doc. No. 3 at 7). "Once the defendant unequivocally instructed Counsel to file a timely Appeal, his Counsel was under an obligation to do so." (Doc. No. 3 at 7). "I was waiting on Defense Counsel to do as every[y] other Defense Counsel does, and as he was paid to do." (Doc. No. 1 at 8).

[4] "Counsel never visited me to plan an Appeal Strategy, Counsel left me hanging." (Doc. No. 1 at 5). "I was still waiting on Counsel to informed me of the appeal process, and whether a Motion for Appeal was warranted, but Counsel has not Communicated with me since my Sentencing." (Doc. No. 1 at 4). "Counsel of record never visited me after Sentencing to plan an Appeal Strategy." (Doc. No. 1 at 5). "It's been One (1) year since my Sentencing and Counsel of record has not Communicated with me despite my efforts to reach him." (Doc. No. 1 at 6).

also claims to have spoken to counsel twice since sentencing.[5] These contradictory allegations fail to demonstrate that Petitioner instructed counsel to file an appeal on his behalf. <u>See</u> <u>generally</u> <u>Flores-Ortega</u>, 528 U.S. at 477; <u>see</u>, <u>e.g.</u>, <u>United States v. Swinney</u>, 2015 WL 9593651 at *12 (E.D. Va. Dec. 31, 2015) (dismissing § 2255 petition without an evidentiary hearing because petitioner's inconsistency and numerous misrepresentations on the record established that his affidavit claiming that he instructed counsel to appeal was not worthy of belief and concluding that he never explicitly requested that counsel file an appeal).

Nor did counsel have a duty to consult with Petitioner about appealing because no rational defendant who received a 50% sentence reduction would want to appeal the restitution amount and minor role enhancement. <u>See</u> <u>Cooper</u>, 617 F.3d at 307. Further, Petitioner's conclusory and contradictory allegations fail to demonstrate a reasonable probability that he would have filed an appeal "but for" counsel's failure to file or consult. <u>See</u> <u>Flores-Ortega</u>, 528 U.S. 484.

Petitioner's vague, conclusory, and internally inconsistent allegations that counsel was ineffective with regards to his appellate rights is facially insufficient and will be denied without an evidentiary hearing.

## IV.    SENTENCE REDUCTION

United States Code Title 18, Section 3582 provides that the court may not modify a term of imprisonment once it has been imposed except, inter alia: (1) upon motion of the Director of the Bureau of Prisons if it finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction is consistent with applicable policy statements issued by the

---

[5] "Petitioner spoke to Counsel twice after Sentencing and [he] promised to mail [Petitioner] the Court's address, but never did." (Doc. No. 1 at 5).

Sentencing Commission, or (2) in the case of a defendant whose sentencing range was subsequently reduced by the Sentencing Commission, upon its own motion or motion of the defendant or the Director of the Bureau of Prisons, after considering the factors set forth in § 3553(a), if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(i), (c)(2); see, e.g., Fed. R. Crim. P. 35(b) (providing for sentence reduction based on substantial assistance).

Petitioner asks that the Court in two *pro se* Letters to reduce his sentence by at least six months because he has written books in jail, is a devoted Christian, has been rehabilitated, will be a valuable asset to society, and his mother is terminally ill with cancer. (Doc. Nos. 6, 7). To the extent that Petitioner seeks a sentencing reduction, the Letters are liberally construed as Motions seeking relief pursuant to § 3582. See generally Haines v. Kerner, 404 U.S. 519 (1972) (a *pro se* complaint, however inartfully pled, must be held to less stringent standards than formal pleadings drafted by lawyers).

None of the circumstances set forth in § 3582 are present in the instant case. Petitioner is not before the Court for resentencing that would warrant reconsideration of the sentencing factors, the Director of the Bureau of Prisons has not applied for sentence reduction, and there has been no reduction to Petitioner's sentencing range. There is no legal mechanism whereby the Court can grant a post-sentencing reduction under these circumstances. See, e.g., United States v. Clawson, 650 F.3d 530 (4th Cir. 2011) (district court exceeded its authority by granting a Rule 35(b) motion based on factors other than substantial assistance); United States v. Emeigh, 279 F.Supp.3d 586 (D. Md. Jan. 12, 2018) (denying § 3582 application based on post-sentencing rehabilitation where the Director of the Bureau of Prisons did not move for the reduction, and the reduction was not expressly permitted by statute or the Rules of Criminal Procedure, and the sentencing guidelines

had not been modified); <u>United States v. Ramos</u>, 2011 WL 2413463 at *2 (M.D. Fla. June 14, 2011) (refusing to consider a defendant's motion for a post-sentencing downward departure due to defendant's rehabilitative efforts); <u>Harris v. United States</u>, 2009 WL 303701 at *3 (W.D. Pa. Feb. 9, 2009) ("extraordinary rehabilitation … is not a basis for resentencing.") (citation omitted); <u>United States v. Lloyd</u>, 484 F.Supp.2d 1232, 1240 (S.D. Ala. April 25, 2007) ("A § 2255 petitioner cannot obtain a new sentencing hearing each time his history and characteristics change in some way; otherwise, federal courts would be bombarded by resentencings, forever ratcheting sentences up or down on an almost daily basis depending on whatever changes there might have been in any of the § 3553(a) factors in the interim.").

Therefore, Petitioner's *pro se* Letters are construed as Motions seeking a sentencing reduction pursuant to § 3582, and are denied.

## V.    CONCLUSION

For the foregoing reasons, the Court will dismiss and deny Petitioner's § 2255 Motion to Vacate.  Petitioner's *pro se* Letters are construed as Motions seeking sentencing reduction pursuant to § 3582 and are denied.

**IT IS, THEREFORE, ORDERED** that:

1.      Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** and **DENIED**.

2.      Petitioner's *pro se* Letters, (Doc. Nos. 6, 7), are construed as Motions seeking sentence reduction pursuant to 42 U.S.C. § 3582 and are **DENIED**.

3.      **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338

(2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: July 11, 2018

Robert J. Conrad, Jr.
United States District Judge